JOB JEFFERSON AND JESSE JEFFERSON,

*vs.*

ELIHU HOLLAND.

*Sussex, April T.* 1820.

A person indebted by bond paid a balance due upon it in notes of an insol-
vent bank, which was not known, at the time, to have stopped pay-
ment. *Held*, not to be a discharge in equity of the debt, but that the
creditor might recover the balance due before such payment.

BILL IN EQUITY.—The complainants sold to the defend-
ant a tract of land, taking his bond for the purchase money,
$1548.00. On the 5th of January, 1818, the defendant paid
one half the debt in specie and in bank notes, which were
current at par;—on the 1st of July,1818, he paid the residue
in notes of the Farmers' Bank, at Snow Hill, and took up
the bond. It appeared in evidence that the Bank had
stopped payment on the 10th of June, but its notes continu-
ed to pass current,at some discount, in Baltimore Hundred,
Sussex county, where the parties resided. The notes of the
Bank wholly ceased to circulate on the 1st of July, the day
on which the payment was made. Wm. S. Hall, a witness
who was present at the settlement of the bond and assisted
in it, testified that Job Jefferson, by whom the notes were
received, observed on taking them, that he supposed it
was good money, to which Holland replied that it was.
On the 10th of July, Job Jefferson tendered the notes back
to Holland, requesting him to receive them and make pay-
ment in good money. Holland refused, and said he would
not pay unless he was compelled by law. The bill alleged that
when the first half of the bond was paid, i. e. in January,
1818, the defendant promised that, should there be any
difficulty in passing the paper then given in payment, he

would take it back and replace it. The answer denied this allegation, and there was no evidence to support it. No promise was alleged, to take back the notes of the Farmers' Bank, in which the last payment was made. The answer stated that the defendant had received the notes for a debt due him in Somerset County, Maryland; that when he paid Holland they were known to be depreciated, but that he did not then know of their having ceased to circulate.

Issues were joined and depositions taken by both parties. The cause came before the Chancellor at the April Term, 1820, for a hearing on the bill, answer, exhibits and depositions.

*Cooper* and *Wells*, for the complainants.

There is no legal payment but in gold or silver. When paper is accepted, it is upon the understanding that it is what it imports to be. It is settled that a payment in counterfeit paper is a nullity. *Markle vs. Hatfield*, 2 *Johns R.* 455, which overrules the dictum to the contrary in *Wade's case*, 5 *Coke*, 114. There is no difference in principle between this paper and counterfeit notes. The paper, though genuine, is of no value, no more than is base metal. *In value* it *is* counterfeit. By the stopping of the Bank the notes ceased to be money. In *Merrick vs. Vaucher*, 6 *T. R.* 52, one being arrested for debt gave his creditor a draft for part of the demand and agreed to settle the residue in a few days. The draft was dishonored. The debtor was then arrested upon the same affidavit, and it was held regular. In *Owenson vs. Morse*, 7 *T. R.* 64, the seller of goods took notes for them, without agreeing to run the risk of their being paid. The notes being worthless, were considered as not a payment. In *Ward vs. Evans*, 2 *Lord Raym.* 930, a distinction is made, which meets this case, that paper is no payment where there is

a precedent debt, though it is payment for goods sold at the time, because of the tacit agreement that it should be received in satisfaction for the goods.

Thus far we have treated the case as if both parties were innocent ; but the proof is sufficient to show that Holland knew of the stopping of the Bank and that the notes had ceased to circulate.   Besides, the first payment being made in specie and paper at par shews an understanding as to what the paper should be, and the defendant on making the payment said it was good money.

*Robinson,* for the defendant.

No inference is to be drawn from the making of the first payment in specie and par paper that the second payment should be made in like paper.   By saying that the paper was " good money " the defendant meant only that it was not counterfeit.   There was no engagement to take back this paper.   The case, then, depends upon general principles and upon the question who, as between two innocent parties, should bear the loss.   The proof is, that up to the receipt of the news of the stopping of the Bank, which came by stage on the 1st of July, this paper formed the circulating medium of Baltimore Hundred.   The payment was made between eleven and twelve o'clock on that day, before the intelligence was received, both parties supposing the paper to be current money. That it had before passed at a discount was known to both alike.   The complainant, Job Jefferson, chose to accept it with the risk, and the complainants should bear the loss.   In *Wade's case,* 5 *Coke* 115, Lord Coke held that even counterfeit money, if accepted, was at the risk of him who took it. *Dyer* 82, *a.*   Bank notes are money, and are a good tender if not objected to.   1ˑ *Burr* 457 : 3 *T. R.* 554.   There being no warranty or agreement to take the notes back the case is in principle like *Parkinson vs. Lee,* 2 *East* 314,

where, upon a sale of hops with warranty that the rest answered to the sample, it was held that a warranty was not implied that the commodity should be merchantable, though a fair price was given. There being a latent defect, unknown to the seller and without fraud on his part, he was held not to be answerable. Here, Holland gave no warranty, and paid the notes without fraud, knowing no more about them than the complainants.

The money in this case is not, as insisted, a nullity, as in the case of a counterfeit, or as in the case cited from 6 *T. R.* 52, where the drawer had no funds. These notes have some value.

RIDGELY, CHANCELLOR.—The justice of this case is entirely with the complainants, and 1 cannot do better than to adopt the opinion of Kent C. J. in the case of *Markle vs. Hatfield*, 3 *Johns, R.* 455. This, indeed, is rather stronger on the part of the complainants. It may be doubted whether the defendant had not knowledge of the state of the Snow Hill notes at the time of the payment. At any rate, he assured the complainant, Job Jefferson, that they were good. Hall (who had himself stopped taking the money before this settlement) cannot be considered as an agent, so as to bind either party by his act. He merely was present and assisted in counting the notes and in settling the business.

There must be a decree for the complainants.